STATE of Missouri, Plaintiff-Respondent,

v.

Leslie Allen ACHTER, Defendant-Appellant.

No. 9639.

Missouri Court of Appeals,
Springfield District.

Oct. 11, 1974.

Albert G. Tindall, Charleston, for defendant-appellant.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

BILLINGS, Judge.

Defendant Leslie Allen Achter was convicted by a Mississippi County jury of carrying a concealed weapon in violation of § 564.610, RSMo 1969, V.A.M.S., and was sentenced by the court as a Second Offender [§ 566.280, RSMo 1969, V.A.M.S.], to a four-year prison term. The sufficiency of the evidence to support the jury's verdict is the only point preserved for our review. We affirm.

■■ In testing the sufficiency of the evidence the facts and evidence and favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded. State v. Strong, 484 S.W. 2d 657 (Mo.1972): State v. Sherrill, 496 S.W.2d 321 (Mo.App.1973). Also, the scope of our review extends only to a determination of whether there is sufficient substantial evidence to support the verdict. It is not our function or prerogative to weigh the evidence to determine whether the charge has been proven beyond a reasonable doubt; that is a function of the jury. State v. Sherrill, supra.

We now turn to the evidence relied upon by the state to support the defendant's conviction and detail those facts which a jury

could reasonably find in arriving at their verdict of guilty.[1]

At about two o'clock in the afternoon of December 20, 1972, Troopers Grissom and Crismon of the Missouri Highway Patrol were in their parked patrol car on a service station parking lot which adjoined Highway 80 on the outskirts of East Prairie. The officers observed a maroon Oldsmobile approaching on the highway, headed toward East Prairie. The officers saw the Oldsmobile suddenly pull off of the highway onto the shoulder thereof and stop. The driver of the car was seen to get out of the car and speak to the driver of a farm tractor that the car had just passed. Thinking that the motorist was having some type of car trouble, the officers decided to investigate.

As the patrol car started towards the Oldsmobile the driver of that car got into it and drove back onto the highway, increasing its speed rapidly as the two vehicles approached each other. The officers recognized defendant as the driver of the Oldsmobile and saw that the license plate on the defendant's vehicle had expired. The patrol car was turned around and the automobile driven by the defendant pursued. The Oldsmobile was observed exceeding the speed limit, being driven on the wrong side of the highway, and nearly striking other motor vehicles on the highway. The defendant's automobile sped into the city limits of East Prairie with the officers in hot pursuit. The Oldsmobile made a sudden turn onto Lee Street and the officers momentarily, ten seconds or less, lost sight of the pursued vehicle. However, when the patrol car turned into Lee Street the officers saw defendant's car stopped in the middle of the street with the left front door standing ajar.

The patrol car was stopped near the abandoned Oldsmobile. Trooper Crismon went in pursuit of the defendant and apprehended him a short distance from where the two vehicles were stopped. Trooper Grissom went directly to the defendant's car and as he started to reach through the open door to remove the ignition keys of the Oldsmobile he saw various items inside the vehicle. The officer removed the keys and the items from the car and "was making a second look into the interior of the automobile . . . when I saw the pistol." The trooper said he saw approximately two and one-half inches of a .32 calibre automatic pistol protruding from the crevice between the seat portion and back portion of the driver's seat just to the right of where the driver would sit. The pistol, fully loaded, had been placed barrel down into the crevice. Trooper Grissom testified that with anyone sitting in the driver's seat it would not have been possible for one to observe the pistol from outside the vehicle.

In a prosecution under § 564.610, RSMo 1969, V.A.M.S., a prima facie case is made when the state's evidence or reasonable inferences therefrom demonstrate (a) the carrying of a dangerous or deadly weapon, (b) concealed on or about the person, (c) along with an intent to so conceal. State v. Jordan, 495 S.W.2d 717 (Mo.App. 1973). A pistol is a dangerous and deadly weapon. State v. Boyd, 492 S.W.2d 787 (Mo.1973). Whether the weapon is on or about the person as forbidden by the statute is determinable by whether it is in such close proximity to the accused so as to be within his easy reach and convenient control. State v. Conley, 280 Mo. 21, 217 S. W. 29 (1919). The necessary intent is presumed from a demonstrated concealment. State v. Holbert, 416 S.W.2d 129 (Mo.1967). And, there is concealment if the weapon is carried so as not to be discernible by ordinary observation. State v. Crone, 399 S.W.2d 19 (Mo.1966).

In this case the defendant was the only person seen by the officers in the de-

---

1. The facts giving rise to this prosecution, with some exceptions, are also detailed in the separate case of State v. Achter, 512 S.W. 2d 894 (Mo.App.1974), wherein defendant's convictions for burglary and stealing were affirmed.

fendant's car. The officers had the car in sight during the chase at all times except for ten seconds or less. One officer went directly to the abandoned car and subsequently discovered the pistol while his companion pursued and took the defendant into custody a short distance from the car. The weapon was within the easy reach and convenient control of the defendant while he was in the car. By reason of the pistol being pushed down, barrel first, into the crevice of the seat where the driver's body would further block the view of the protruding two and one-half inches of the pistol, the weapon was not discernible by ordinary observation and therefore concealed. Such evidence and the reasonable inferences flowing therefrom established a prima facie case.

Nevertheless, the defendant argues that the jury had to first presume that the pistol was in the car while he was in it and engage in a further presumption that he was the person who had concealed it in his car. He directs our attention to State v. Simon, 57 S.W.2d 1062 (Mo.1933), wherein the court held that in a prosecution under the concealed weapons statute a conviction cannot stand on presumption based on presumption. We agree, but as we have outlined in the preceding paragraph the state in this case was able to demonstrate sufficient facts from which the jury could find, without engaging in cumulative presumptions, that the pistol was in the car while defendant was driving the vehicle and that he was aware of the presence of the gun and intended to conceal it. State v. Simon, relied upon by the defendant, is readily distinguishable. Simon was the driver of a car in which there was a passenger at the time the two were arrested. One officer drove the passenger to the police station while another rode with Simon in the latter's car. En route to the station Simon informed the officer that his passenger had concealed a weapon in the glove compartment of the car. The officer searched the compartment but found no weapon. Simon and his passenger were booked and locked in cells, which took about five minutes.

The officers then returned to Simon's car and found an automatic pistol between the right side of the car and the *passenger's* seat beside the place where the passenger had been sitting and some four and one-half feet from where Simon had been sitting. The *Simon* case offers no aid to the defendant.

A second prong of defendant's attack on his conviction is that in addition to the state's having to prove that he engaged in certain conduct (carrying a concealed weapon) as is proscribed by § 564.610, RSMo 1969, V.A.M.S., the state had the further burden to affirmatively prove that the defendant was not within either of the two classes of persons excepted from the operation of the statute.

Section 564.610, RSMo 1969, V.A.M.S., after describing and defining the crime of carrying a concealed weapon and the punishment therefor concludes: "[B]ut nothing contained in this section shall apply to legally qualified sheriffs, police officers and other persons whose bona fide duty is to execute process, civil or criminal, make arrests, or aid in conserving the public peace, nor to persons traveling in a continuous journey peaceably through this state."

Defendant, who did not claim at the trial and asserts no claim on this appeal that he falls within either of the classes excepted from the operation of the statute, would place the burden of negativing these exceptions on the state. Also, although not properly preserved by objection or motion for new trial, he says that the state's main instruction is deficient by reason of omitting the excepted classes from the requisite findings the jury must make to find the defendant guilty. Defendant contends State v. Lewis, 491 S.W.2d 326 (Mo.1973), squarely supports his view. Since whether or not the state's burden was met is also directly involved with its verdict directing instruction we will consider the latter in conjunction with the former despite no proper preservation of the instruction question.

The issue before us has been considered often by the courts of this state but usually in the context of whether or not an indictment or information sufficiently states an offense for which a defendant can be tried and convicted. Since an indictment or information must be "a plain, concise and definite written statement of the *essential* facts constituting the offense charged" [Rule 24.01, V.A.M.R. (our emphasis); Hodges v. State, 462 S. W.2d 786 (Mo.1971)], we first observe that the facts which the state must plead are ordinarily the same facts which the state must prove beyond a reasonable doubt in order to sustain a conviction. State v. DeGroat, 259 Mo. 364, 168 S.W. 702 (1914). An exception to this observation, which we do not find applicable in the case before us, results when the defendant raises what is designated a "special negative defense".[2] In such instance the state must also carry the burden of proof even though the indictment or information had been silent on the issue.

The state must negative an exception "[w]henever [it] is contained in the section defining an offense, and constitutes a part of the description of the offense sought to be charged . . . otherwise no offense is charged. . . ." State v. O'Brien, 74 Mo. 549, 551 (1881); Williams v. State, 437 S.W.2d 82 (Mo.1969). The state's duty in this regard extends to "all cases where, if such exceptions be omitted, the offense cannot be accurately described. . . ." State v. DeGroat, supra, 259 Mo. 364, 168 S.W. 702, 705; State v. Pilkinton, 310 S.W.2d 304 (Mo.App.1958).

But our courts have repeatedly recognized that "if the ingredients constituting the offense are capable of exact definition, without reference to the exception or proviso, there such reference may with safety be omitted, since the matter contained in the exception, etc., is not descriptive of the offense, but only matter of defense to be brought forward by the accused. . . ." State v. Bockstruck, 136 Mo. 335, 351, 38 S.W. 317, 320 (1896); Williams v. State, supra, 437 S.W.2d at 86; State v. Bridges, 412 S.W.2d 455 (Mo. 1967); State v. Zammar, 305 S.W.2d 441 (Mo.1957); State v. Renard, 273 S.W. 1058 (Mo.1925); State v. Brown, 306 Mo. 532, 267 S.W. 864 (1924); State v. DeGroat, supra, 168 S.W. at 704; State v. Smith, 233 Mo. 242, 135 S.W. 465 (1911); State v. Price, 229 Mo. 670, 129 S.W. 650 (1910); City of St. Louis v. Tielkemeyer, 226 Mo. 130, 125 S.W. 1123 (1910); State v. O'Brien, supra, 74 Mo. at 551; State v. Shiflett, 20 Mo. 415 (1855); State v. Buford, 10 Mo. 703 (1847); City of St. Louis v. Eskridge, 486 S.W.2d 648 (Mo.App. 1972); State v. Pilkinton, supra, 310 S.W. 2d at 307. "[W]here such exceptions are not a part of the statutory definition of the crime, where they are contained in distinct and independent clauses of the statute . . . it is not usually necessary either to plead them or to prove them. . . ." State v. DeGroat, supra, 168 S.W. at 705; State v. Bridges, supra, 412 S.W.2d at 457;

---

2. "By 'special negative defense' is meant a defense (1) upon which defendant does not carry the burden of proof (self-defense, accident, honest claim to ownership or use of property, entrapment, etc.), (2) supported by enough evidence arising during the whole case to raise a reasonable doubt of defendant's guilt, and (3) presenting a positive fact or set of circumstances, as distinguished from a bare denial or converse, which, if found, would negate one or more essential elements of an offense . . . or which would, if found, constitute a legal defense . . . ." MAI– CR 2.04, Notes on Use, p. 2–9 (10–8–73). Thus a "special negative defense" differs from an "affirmative defense" in that the defend-

ant has the burden to prove defenses of the latter type by a preponderance of the evidence. See, e. g., MAI–CR 2.30, p. 2–24 (10–8–73) ("affirmative defense" of not guilty by reason of mental disease or defect). MAI–CR 13.10, p. 13–3 (10–8–73), prescribes the instruction approved by our Supreme Court, en banc, for use in criminal cases under § 564.610, RSMo 1969, V.A.M.S. That instruction does not require that the jury pass on the "special negative defense" that defendant falls within one of the classes of persons excluded from the operation of the statute *unless* that defense is offered by the defendant. MAI–CR 13.10, Notes on Use, p. 13–4 (10–8–73).

City of St. Louis v. Eskridge, supra, 486 S.W.2d at 651.

In State v. Brown, supra, our Supreme Court dealt with an earlier version of § 564.610 [§ 3275, RSMo 1919] in a manner which disposes of the instant point adversely to the contention urged by defendant. In *Brown*, the court set forth the law as we have stated it, relying on State v. O'Brien, supra; State v. Bockstruck, supra; State v. Price, supra; and State v. Smith, supra, approving this quotation from Kelley's Criminal Law and Practice (3d Ed.) p. 149, § 193: "[W]here the exception or proviso is found in a separate and distinct clause or part of the statute, disconnected from that which describes the offense, no such negative averment is necessary in the indictment, and if the defendant is within the terms of the exception, he must show it in his defense." Applying this law to the statute the court concluded: "The exception in [§ 564.610] is not descriptive of the offense of carrying concealed weapons. The persons described in the exception are merely those not within the operation and effect of the law denouncing the crime, which is otherwise completely defined without reference to such proviso. That a person comes within the class of persons named in the proviso is a matter of defense and the fact that a given defendant charged with the violation of the section does not come within the terms of the proviso need not be covered by negative averment in the indictment or information." 267 S.W. at 865. See also State v. Renard, supra.

In raising this point defendant does not refer us to any part of the massive authority which weighs against his contention; instead, as noted, he relies on State v. Lewis, supra, 491 S.W.2d 326, to dislodge and overcome the inertia of the well-reasoned cases already discussed. In *Lewis*, the trial court gave a verdict directing instruction which required that the jury find that the defendant was not within either excepted class before it could convict. Insofar as is relevant to the case at bar, the issue before the court was whether the instruction given had improperly cast the burden of proof upon the defendant. The court ruled that issue against the defendant and by way of dictum stated, without citation of authority, that "to sustain its burden, the State was required to present evidence from which a jury could find that the accused was not engaged in an excepted activity . . . ." 491 S.W.2d at 327. While extremely broad, this statement by the court validly states the law *if* the defendant had raised the defense that he was within one of the excepted classes. See note 2, supra. If that were not the case in *Lewis*, we nevertheless feel constrained to follow the holding of State v. Brown, supra, since the *Lewis* dictum is not supported by authority and does not evidence any intent to overrule prior law, and since the Supreme Court, in approving MAI–CR 13.10 after the *Lewis* decision has dictated that the state need not negative the exceptions in § 564.610 until the exceptions are raised by way of defense.[3]

Since there is no evidence that the defendant was within the excepted categories enumerated in the statute we hold the state was not required to plead, prove or instruct that he was not within the exceptions.

The information is sufficient in form and substance. The verdict is in proper form and responsive to the information and issues presented. Allocution was granted and the sentence and judgment are proper and responsive to the verdict.

The judgment is affirmed.

HOGAN, C. J., and STONE, TITUS and FLANIGAN, JJ., concur.

3. As a practical matter the question comes to mind as to just exactly how the state would, in the absence of the defendant's taking the stand, undertake to prove a defendant was not within the various exceptions.